## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-CA-00835-SCT

*PIERRE H. THODEN D/B/A ETC FBO PIERRE H.*
*THODEN IRA 47473*

*v.*

*DEBORAH HALLFORD*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/22/2022 |
| TRIAL JUDGE: | HON. D. NEIL HARRIS, SR. |
| TRIAL COURT ATTORNEYS: | E. FOLEY RANSON |
| | LEWIE G. "SKIP" NEGROTTO, IV |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | LEWIE G. "SKIP" NEGROTTO, IV |
| ATTORNEY FOR APPELLEE: | E. FOLEY RANSON |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 06/27/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING, P.J., CHAMBERLIN AND ISHEE, JJ.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1. This case returns to this Court following remand for a hearing to determine damages owed Pierre Thoden from a voided tax sale. Now that the hearing has been held, Thoden alleges error in the chancery court's determination. Upon review, we find one error and thus affirm the chancery court's determination in part and reverse and render it in part.

### FACTS AND PROCEDURAL HISTORY

¶2. Deborah Hallford owned a house in Jackson County in 2014. That year, she failed to pay property taxes on it, which led to the house being sold at a tax sale on August 31, 2015.

Thoden, a resident of New York, bought the house at the sale for $500 and paid $133.76 for a clerk's conveyance. Hallford failed to redeem the property within the redemption period, and Thoden later received title after he paid the delinquent taxes for 2015-18. Following receipt of title, he "obtained a Judgment of Possession . . . on April 23, 2018, and began making improvements on the property." *Thoden v. Hallford*, 310 So. 3d 1156, 1158 (Miss. 2021).

¶3.     After learning of the tax sale, "Hallford filed a complaint to set aside the tax sale in Jackson County Chancery Court" on June 19, 2018. *Id.* at 1158-59. In her complaint, she claimed that, due to a lack of proper notice under Mississippi Code Section 27-43-3, the sale was void. *Thoden*, 310 So. 3d at 1159. Thoden then filed an answer and counterclaim in which he argued that proper notice had been given and that he was entitled to relief. *Id.*

¶4.     "[I]n August of 2018, Hallford filed a motion for summary judgment[,]" arguing the sale "should be declared void" pursuant to Section 27-43-3. *Id.* "On October 1, 2018, Thoden filed a response in opposition to Hallford's motion[,]" arguing "that genuine issues of material fact involved the adequacy of notice." *Id.*

¶5.     "After two hearings on October 4, 2018, and February 21, 2019, the chancellor ordered the parties to each submit proposed findings of fact and conclusions of law." *Id.* "Then, on April 4, 2019," the chancellor found in Hallford's favor and voided the tax sale based on insufficient notice. *Id.* The chancery court's "order denied Thoden any relief for failure to present proof." *Id.*

2

¶6.     Thoden then filed a motion to alter or amend the judgment. *Id.* He argued that the chancery court erred by denying him "a statutory lien and reimbursement for appliances, costs, and expenses on the property . . . ." *Id.* "In an amended June 14, 2019, order, the court found that Thoden did have a statutory lien on Hallford's property because Thoden had paid $500 at the tax sale." *Id.* Per the order, Hallford was "to pay Thoden this sum, plus interest (a total of $845), within ninety days; otherwise, the court found, Thoden would be entitled to enforce the lien." *Id.*

¶7.     In his appeal, Thoden did not contest the voiding of the tax sale. This Court therefore "affirm[ed] the chancellor's finding that the tax sale [was] void." *Id.* at 1160 n.2. Thoden did, however, raise three issues. He

> argue[d] that the chancellor erred by (1) shifting the burden of proof to Thoden regarding the amount he is owed for his statutory lien on . . . Hallford's property under Mississippi Code Section 27-45-27 (Supp. 2020), (2) denying Thoden reimbursement for the taxes he paid on the property in the years after the tax sale and for the cost of the improvements Thoden made to the property, and (3) allowing Hallford a ninety-day period to pay Thoden for damages without requiring Hallford to pay the interest that would accrue during that time.

*Id.* at 1160.

¶8.     On the first issue, this Court held that "[t]he burden is on Thoden to present proof of his damages." *Id.* at 1161. Further, following the tax sale being declared void, "Thoden [was] entitled to a hearing to present proof of his damages." *Id.* Finding that no such hearing was held in the chancery court proceedings, this Court remanded the case

> for a hearing so that Thoden [could] present proof of the amount he is owed as damages, including any statutory refund under Mississippi Code Section 27-43-3, statutory damages under Mississippi Code Section 27-45-27 (with any

3

accompanying statutory lien), and such other damages to which Thoden is entitled.

*Id.*

¶9.     On the second issue, this Court held that "[u]nder Mississippi Code Section 27-43-3[], Thoden is entitled to a refund of his tax-sale purchase money paid." *Id.* And

> [u]nder Mississippi Code Section 27-45-27(1), Thoden is entitled to a lien on the land for the amount of what he paid at the tax sale with interest on that amount "at the rate of one and one-half percent (1-1/2%) per month, or any fractional part thereof, and all expenses of the sale and registration . . . ."

*Id.* (quoting Miss. Code Ann. § 27-45-27(1) (Supp. 2020)).  Further, this Court mandated that, since "Thoden sought in the chancery court to enforce his statutory lien on the property[,]" "the amount of Thoden's statutory lien . . . under Mississippi Code Section 27-45-27(1) should be calculated" at the hearing on remand. *Id.* Regarding Thoden's claim to reimbursement for costs of improvements, this Court held that "[n]othing prevents the purchaser from recovering non-statutory damages when appropriate under some alternative theory of relief."  It therefore "remand[ed] the issue for consideration by the chancellor." *Id.* at 1162.

¶10.    As to the third issue, this Court declined to find any error with the ninety-day period and deferred to the Mississippi Legislature's "within some short time to be fixed by decree" language in Mississippi Code Section 27-45-27. *Id.* at 1163 (internal quotation marks omitted) (quoting Miss. Code Ann. § 27-45-27(1) (Supp. 2020)).

¶11.    On remand, Thoden set forth his claims for damages in an amended counterclaim.  He (1) sought statutory damages under Mississippi Code Section 27-43-3 (Supp. 2023), (2)

sought to enforce his statutory lien on the subject property under Mississippi Code Section 27-45-27 (Supp. 2023), (3) alleged his lien included "all taxes paid on the property at any tax sale with all accrued interest, as well as all expenses of the sale and registration from the date paid until reimbursed in full[,]" and (4) sought reimbursement for his repairs on, improvements to, and maintenance of the property.

¶12. In her answer to Thoden's amended counterclaim, Hallford denied Thoden's claim under Section 27-43-3, but she admitted Thoden "is entitled to a statutory lien pursuant to . . . Section 27-45-27." This admission was qualified, however, since she denied Thoden's claims to sale and registration expenses. She also denied his claim to reimbursement. Further, she (1) noted Thoden's judgment of possession of her property "was void and set aside for lack of in personam jurisdiction" over her on December 2, 2019, and (2) alleged Thoden was a trespasser on her property since the tax sale was "void ab initio[.]"

¶13. Prior to the requisite hearing, Thoden gave a perpetuation deposition via Zoom on October 25, 2021, due to a medical condition that limited his ability to travel. During the deposition, counsel for Hallford, E. Foley Ranson, had the following exchange with Thoden:

> Ranson: And during the time after you made these improvements to this property, did you rent the property to someone?
>
> Thoden: Yes, I did.
>
> Ranson: And what was the monthly rent you charged?
>
> Thoden: I believe it was 750 a month.
>
> Ranson: And how many months did you collect that rent?
>
> Thoden: I believe it was maybe five or six months of rent.

5

¶14.    The hearing commenced on November 4, 2021. Thoden was in attendance despite his condition.  During the hearing, neither party mentioned the rent Thoden collected nor was the rent included in any of the exhibits entered into evidence.  After Thoden and Hallford rested, the chancellor and counsel for both parties retired to chambers and engaged in a discussion off the record.  When the record resumed, counsel for Hallford moved to offer Thoden's perpetuation deposition into evidence.  The chancellor asked counsel for Thoden if he had any objection.  After he confirmed he did not, the deposition was entered into evidence, and the hearing concluded.  Upon conclusion, the chancellor ordered both parties to submit their proposed findings of fact and conclusions of law, which both did on December 6, 2021.

¶15.    On March 22, 2022, the chancellor entered his final judgment.  Regarding Thoden's claim to reimbursement, the chancellor noted that, in ***Thoden***, this Court labeled the tax sale void ab initio.  *See **Thoden***, 310 So. 3d at 1162.  The chancellor then (1) found Thoden "acted at his own peril" in repairing, improving, maintaining, and paying taxes on "property in which he had no legal interest" and (2) denied Thoden's claim to reimbursement.

¶16.    The chancellor also found Thoden "was unjustly enriched by $4,500.00" as a result of the rent "he collected . . . from tenants at $750.00 per month for six months ($4,500.00)."  According to the chancellor, Thoden could not "keep money he collected on property where he was in the nature of a trespasser."

¶17.    Regarding statutory damages, the chancellor found (1) that Thoden "is entitled to the amount he paid in taxes, plus 1½% interest per month"; (2) that Thoden "paid $500.00 in

6

taxes on August 31, 2015"; (3) that "[i]nterest at 1½% amounts to $7.50 per month"; (4) that Thoden "is entitled to 64 months of interest calculated through November 30, 2021"; and (5) that Thoden "is entitled to a credit of $980.00" against the $4,500 he was ordered to pay Hallford.

¶18.    All damages and credit considered, the chancellor concluded Thoden owed Hallford $3,520, calculated by subtracting the $980 credit from the $4,500 owed from the rent collected. After the final judgment, Thoden filed a motion to alter or amend the judgment on April 1, 2022. But the chancellor denied the motion on July 20, 2022. Thoden then filed a notice of appeal on August 17, 2022.

## ISSUES

¶19.    Thoden raises three issues on appeal:

1.    Whether the chancery court erred by awarding Thoden an inadequate refund pursuant to Mississippi Code Section 27-43-3 and an inadequate reimbursement of his statutory lien because it failed to properly calculate statutory damages pursuant to Section 27-45-27.

2.    Whether the chancery court erred by not awarding Thoden nonstatutory damages entered into evidence without objection.

3.    Whether the chancery court erred by granting Hallford a set-off not pled or requested by Hallford based on monetary amounts not in evidence at the time Hallford rested her case.

## STANDARD OF REVIEW

¶20.    "As to an ultimate determination on the merits, this Court will not reverse a chancery court's findings 'unless the chancellor was manifestly wrong, clearly erroneous or applied an erroneous legal standard.'" ***Thoden***, 310 So. 3d at 1159 (quoting ***Goode v. Vill. of***

7

*Woodgreen Homeowners Ass'n*, 662 So. 2d 1064, 1070-71 (Miss. 1995)). Further, "[w]here there is substantial evidence to support the chancellor's findings, this Court is without the authority to disturb his conclusions, although this Court might have found otherwise as an original matter." *Id.* (internal quotation marks omitted) (quoting *Goode*, 662 So. 2d at 1070-71).

¶21.    "For questions of law, we employ a de novo standard of review and will only reverse for an erroneous interpretation or application of the law." *Okoloise v. Yost*, 283 So. 3d 49, 55 (Miss. 2019) (internal quotation marks omitted) (quoting *Boyd v. Tishomingo Cnty. Democratic Exec. Comm.*, 912 So. 2d 124, 128 (Miss. 2005)).

## DISCUSSION

### 1.    Statutory Damages

#### a.    Purchase Money Refund and Interest

¶22.    To reiterate, in *Thoden*, this Court held that, "[u]nder Mississippi Code Section 27-43-3(1), Thoden is entitled to a refund of his tax-sale purchase money paid." *Thoden*, 310 So. 3d at 1161.  Further,

> [u]nder . . . Section 27-45-27(1), Thoden is entitled to a lien on the land for the amount of what he paid at the tax sale with interest on that amount "at the rate of one and one-half percent (1-½%) per month, or any fractional part thereof, and all expenses of the sale and registration . . . ."

*Id.* (quoting Miss. Code Ann. § 27-45-27(1)).

¶23.    Regarding the purchase money and the interest accrued on it, we need only evaluate the chancellor's calculation.  Neither party disputes that Thoden paid $500 for the subject property at the tax sale on August 31, 2015.  The only value in question is the interest

amount. Per Section 27-45-27(1), the amount is calculated by taking "one and one-half percent (1-½%)" of "the amount paid by the purchaser" and multiplying it by the relevant number of months between the sale and the final judgment. Miss. Code Ann. § 27-45-27(1); *see generally* **McMahon v. Yazoo Delta Lumber Co.**, 92 Miss. 459, 43 So. 957, 959 (Miss. 1907) (holding that the purchaser was entitled to the sum paid and statutory damages upon decree in the complainant's favor). By the chancellor's calculation, the product of the equation is $480 (1½ percent of $500 ($7.50) multiplied by sixty-four months). The chancellor found sixty-four months to be the relevant number of months by referencing the period between August 31, 2015, and November 30, 2021.[1] But the final judgment was entered four months after November 30, 2021, on March 22, 2022.

¶24. The record indicates that the November 30, 2021, end date and the sixty-four month number were first mentioned in Hallford's proposed findings of fact and conclusions of law submitted on December 6, 2021. There, Hallford claimed that Thoden was "entitled to 64 months of interest calculated through November 30, 2021." Hallford's use of this end date is understandable since it was the nearest monthly end date to December 6, 2021, when she submitted her findings of fact and conclusions of law. And we can only conclude that the chancellor simply applied this date, and Hallford's sixty-four month calculation, when entering his final judgment.

---

[1] We note that the period between August 31, 2015, and November 30, 2021, contains seventy-five months, not sixty-four months. This error in the chancellor's calculation is moot, however, since we modify the end date of the interest period from November 30, 2021, to March 22, 2022.

¶25. November 30, 2021, being the end date for the calculation of interest deprives Thoden of the interest accrued during the four months between November 30, 2021, and the date of the final judgment, however. We therefore modify the chancellor's calculation of the interest period to August 31, 2015 through March 22, 2022. The equation then becomes: 1½ percent of $500 ($7.50) multiplied by seventy-nine months. Thoden is thus entitled to $1,092.50—the sum of $500 as a purchase money refund under Section 27-43-3 and $592.50 in interest on the purchase money under Section 27-45-27(1).

### b. Cost of the Conveyance

¶26. Thoden claims he is entitled to "the cost he incurred to obtain his Chancery Clerk's Conveyance ($133.76)" as an "expense[] of the sale and registration" under Section 27-45-27(1). He also claims "the cost of the Clerk's Conveyance . . . should begin to accrue interest on the date it was paid (April 4, 2016) and continue to accrue interest until November 30, 2021 . . . ."

¶27. Little case law exists to clarify which expenses in a tax sale amount to "expenses of the sale and registration." Miss. Code Ann. § 27-45-27(1). In *Crorow Hardwood Co. v. Moye*, 161 Miss. 642, 137 So. 493, 494-95 (1931), however, this Court addressed clerk's fees under section 536 of the Code of 1880, a predecessor to Section 27-45-27(1). The question before the *Crorow* Court was whether fees due to the sheriff and the clerk were costs required to be paid by the purchaser at "the time of the sale." *Id.* at 495. In holding that they were not, the *Crorow* Court pointed to section 536, which provided in relevant part: "[t]he amount paid by the purchaser of land at any sale thereof for taxes . . . *and all expenses of the*

*conveyance and registration* . . . shall be a lien on said land in favor of the purchaser . . . ." Miss. Code (1880) § 536 (emphasis added).  The ***Crorow*** Court then found that "when a lien is fixed on the land in case of an illegal sale, it is specifically stated that a purchaser may recover the expenses of *conveyances* and *registration*, showing that these charges are to be paid by him, not as a part of the consideration of the sale, but as a matter of acquiring title in virtue of his bid at the sale."  ***Crorow***, 137 So. at 495.

¶28.　The ***Crorow*** Court clearly qualified the cost of a clerk's conveyance as a part of the lien provided for in section 536.  We thus hold (1) that the cost of the clerk's conveyance paid by Thoden qualifies as an "expense of the sale and registration" under Mississippi Code Section 27-45-27(1) and (2) that it is a part of Thoden's lien under the same section.  Absent any further case law, we do not deviate from the ***Crorow*** Court's qualification—albeit under a previous iteration of Section 27-45-27(1)—and award Thoden the $133.76 he paid for the clerk's conveyance.

¶29.　Regarding Thoden's claim to interest on the cost of the conveyance, we defer to the plain language of Section 27-45-27(1). The statute provides in relevant part:

> The amount paid by the purchaser of land at any tax sale thereof for taxes, either state and county, levee or municipal, and interest on the amount paid by the purchaser at the rate of one and one-half percent (1-1/2%) per month, or any fractional part thereof, and all expenses of the sale and registration, thereof shall be a lien on the land in favor of the purchaser . . . .

Miss. Code Ann. § 27-45-27(1) (Supp. 2023).  The interest provision clearly applies only to "the amount paid by the purchaser" for two reasons.  First, the word "interest" directly precedes the "on the amount paid by the purchaser" language. ***Id.***  Second, the "all expenses

11

of the sale and registration" provision appears after the interest provision is separated from it by a dividing comma. *Id.* Nothing in the statute's structure or in its order indicates that the interest provision extends to "all expenses of the sale and registration." *Id.* Thoden has therefore misinterpreted the statute, and his claim to interest on the cost of the conveyance fails.

### c.    2015-18 Taxes Paid by Thoden

¶30.    On appeal, "Thoden claims he is entitled to . . . reimbursement for post-forfeiture taxes paid" for 2015-18 ($2,231.06) plus interest ($1,539.43), totaling $3,770.49.[2] The chancellor found, however, that Thoden "chose to spend money for . . . property taxes on property in which he had no legal interest" and was therefore not entitled to the reimbursement.

¶31.    We find no statute that entitles the purchaser to post-forfeiture taxes paid. Despite this statutory deficiency, Thoden claims he is entitled to them under Section 27-45-27(1). The Section only contemplates "[t]he amount paid by the purchaser of land at any tax sale[,]" however. Miss. Code Ann. § 27-45-27(1). Because the 2015-18 taxes were not a part of the sale, we see no statutory basis for Thoden to claim he is entitled to the taxes, let alone interest on them.

¶32.    But since the tax sale was declared "void *ab initio*" and is therefore treated as if it "never happened," Hallford is not allowed to have the taxes paid on her property from 2015-

---

[2] The tax value for 2015 entered into evidence differs from the value listed on appeal. The value in evidence was $618.57, but the value on appeal is $618.54. We proceed on the value entered into evidence. The sums here thus vary slightly from those listed in Thoden's brief.

12

free of charge. *Thoden*, 310 So. 3d at 1162. "Unjust enrichment . . . applies to situations where there is no legal contract and 'the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another.'" *Powell v. Campbell*, 912 So. 2d 978, 982 (Miss. 2005) (quoting *Koval v. Koval*, 576 So. 2d 134, 136 (Miss. 1991)). Under an unjust enrichment analysis, Hallford is effectively in possession of $2,231.06 of Thoden's money and has thus been unjustly enriched since, if the sale is treated as if it never happened, she owed the taxes on her property for 2015-18. To deny Thoden this amount as damages would equate to allowing Hallford to escape taxation for 2015-18 by way of Thoden's post-forfeiture tax payments. We thus reverse the chancellor's determination and award Thoden $2,231.06.

### d.        Cost of Repairs, Improvements, and Maintenance

¶33.    Concerning statutory damages, Thoden lastly argues that he is entitled to reimbursement for improvements under Mississippi Code Section 27-45-3 (Rev. 2017). At the outset, he admits that "there is no award for statutory interest damages found in [Section 27-45-3]." He then proceeds to argue that, because Hallford did not redeem the property, he is entitled to relief on public policy grounds.

¶34.    As this Court held in *Thoden*, "Section 27-45-3 only applies if the land is redeemed." *Thoden*, 310 So. 3d at 1162; *see* Miss. Code Ann. § 27-45-3. Any argument Thoden makes based on Section 27-45-3 is therefore moot since Hallford did not redeem the subject property. Further, his argument that, since Hallford did not redeem the property, he should

13

be made whole on public policy grounds is in no way an argument for statutory damages. We therefore reject Thoden's claim to reimbursement for improvements under the statute.

### 2. Nonstatutory Damages

¶35. On appeal, "Thoden submits he is owed five thousand three hundred fifty-six dollars and sixty-seven cents ($5,356.67) to reimburse him for non-statutory damage[s] admitted into evidence during his case in chief without objection." This value is the alleged sum of the cost of Thoden's repairs to, improvements on, and maintenance of the subject property. The chancellor denied Thoden the sum, finding that Thoden

> chose to spend money for repairs . . . [and] improvements . . . on property in which he had no legal interest. The case before the Court is a classic case of caveat emptor as discussed in [*Davis v. Estate of Tiblier*, 107 So. 3d 181, 184-85 (Miss. Ct. App. 2013)] . . . . Sadly, [Thoden] acted at his own peril.

¶36. We agree with the chancellor's denial, but the issue can be resolved without relying on *Davis*. "In the context of tax sales, this Court has held that":

> "[T]he purchaser at a tax sale buys strictly under the rule of caveat emptor." In the absence of any statutory provision to the contrary, there is no warranty on the part of the state, or other public body making the sale and if the purchaser's title proves defective for want of compliance with the law in proceedings leading up to the sale or in the conduct of the sale, he has no affirmative remedy other than that which is provided by statute.

*Hobson v. Chase Home Fin., LLC*, 179 So. 3d 1026, 1037 (Miss. 2015) (quoting *Parsons v. Marshall*, 243 Miss. 719, 139 So. 2d 833, 837 (1962)). Further, in *SASS Muni-V, LLC v. DeSoto County*, 170 So. 3d 441, 448-49 (Miss. 2015), this Court noted that, "[w]hile this Court has held that caveat emptor applies to tax sales, [it] also [has] been clear that it applies

only in the absence of a statute granting the purchaser a remedy." *Id.* (citing *Parsons*, 139 So. 2d at 837).

¶37. Thoden's cites no statutory authority, nor are we aware of any, that entitles Thoden to reimbursement for the cost of the repairs, improvements, and maintenance that he had the option of not incurring. Thoden indeed argues "[a]t all times after obtaining his Judgment of Possession due to Hallford's abandonment of the property, [he] was operating under what he believed to be color of law/possession." This argument is immaterial to our analysis, however. The fact remains that, under this Court's prior holdings, the doctrine of caveat emptor applies to the tax sale at issue here.

¶38. This Court held in *Thoden* that "[n]othing prevents the purchaser from recovering non-statutory damages when appropriate under some alternative theory of relief." *Thoden*, 310 So. 3d at 1162. But again, Thoden merely argues he is entitled to reimbursement because he believed he was the lawful possessor. His belief does not amount to "some alternative theory of relief." *Id.* As the *Thoden* Court held, "[w]hen a tax sale is void *ab initio*, that tax sale never happened . . . ." *Id.* If the tax sale never happened, then it follows that the purchaser operated at his own risk in investing his money into repairs, improvements, and maintenance. And the property owner—Hallford—should not be liable for that risk.

¶39. We recognize that our application of (1) unjust enrichment to the 2015-18 taxes and (2) caveat emptor to Thoden's improvement costs may appear contradictory, since both lack a governing statutory provision. *See Hobson*, 179 So. 3d at 1037 (quoting *Parsons*, 139 So. 2d at 837). But we emphasize that Hallford, as the owner of the subject property, was

15

required to pay the taxes on it from 2015-18. In contrast, Hallford was not required to modify or improve her property. Thoden instead undertook the modifications of his own volition in an attempt to improve the property—a property that he never owned. We therefore cannot say "in good conscience" that Hallford "is in possession of money or property" that she "should not retain but should deliver to [Thoden]." *Powell*, 912 So. 2d at 982 (internal quotation mark omitted) (quoting *Koval*, 576 So. 2d at 136). Requiring Hallford to pay Thoden for the cost of his optional improvements would amount to financially penalizing Hallford for her property being sold in an *invalid tax sale*.

### 3. The Set-Off

¶40. Thoden cites Mississippi Rule of Civil Procedure 54(c), which became Mississippi Rule of Civil Procedure 54(d) effective July 1, 2018, to argue that the set-off was error. He argues that the award of $4,500 to Hallford violated the Rule since (1) no relief can be granted to Hallford that was not requested in the pleadings, and (2) the award exceeded the amount requested in the pleadings. His arguments contradict both the rules of civil procedure and this Court's prior holdings.

¶41. Rule 54(d), which was amended again effective January 18, 2024, expressly states that, excluding default judgments, "[e]very other final judgment should grant the relief to which each party is entitled if such relief is within the jurisdiction of the court to grant, *even if the party has not demanded that relief in its pleadings*." M.R.C.P. 54(d) (emphasis added). Further,

> Rule 54(d) must be read in conjunction with Rule 8, which requires that every pleading asserting a claim include a demand for the relief to which the pleader

16

believes himself entitled.  Thus, Rule 54(d) applies to any demand for relief, whether made by defendant or plaintiff or presented by way of an original claim, counter-claim, cross-claim, or third-party claim.

M.R.C.P. 54 advisory comm. n.

¶42.    Mississippi Rule of Civil Procedure 8(a)(2) states that "[r]elief in the alternative or of several different types may be demanded."  M.R.C.P. 8(a)(2).  When Rule 54(d) and Rule 8(a)(2) are read together, Thoden's argument that the $4,500 in rent collected had to be requested by Hallford in the pleadings fails.  Hallford prayed for general relief in her original complaint to void the tax sale.  And neither Rule 54(d) nor Rule 8(a)(2) required her to specifically request the $4,500 in the pleadings.

¶43.    As to Thoden's second argument—the award being in excess of the amount requested—he relies upon language that was removed from Rule 54(d) effective January 18, 2024.  The language read: "final judgment shall not be entered for a monetary amount greater than that demanded in the pleadings."  M.R.C.P. 54(d) (prior to January 18, 2024).

¶44.    In his amended counterclaim, Thoden requested an amount not "less than twenty thousand dollars ($20,000)."  By Thoden's logic, he would like to have the option of receiving damages equal to or greater than $20,000 but limit Hallford to far less.  We reject this logic.  In *Pilgrim Rest Missionary Baptist Church ex rel. Board of Deacons v. Wallace*, 835 So. 2d 67, 75 (Miss. 2003), this Court clarified that "relief need not be limited in kind or amount by the demand but may include relief not requested in the complaint."  Further, in *Cain v. Robinson*, 523 So. 2d 29, 34 (Miss. 1988), this Court held that, even though no "monetary judgment" was demanded in the pleadings, such an award was not "preclude[d]"

17

by Rule 54(c).[3]  Having consulted this Court's prior holdings, nothing in our case law suggests that the $4,500 award was made in error under Rule 54(d).

¶45.    Beyond his arguments under Rule 54(d), Thoden further attacks the $4,500 award by arguing that his perpetuation deposition was inadmissible since (1) Thoden was available to testify at trial, (2) Hallford did not call Thoden to testify, and (3) Hallford rested her case before the deposition was entered into evidence.  This Court contemplated the admissibility of a deposition when the deponent is present at trial in *McMillan v. King*, 557 So. 2d 519 (Miss. 1990), and in *Hartel v. Pruett*, 998 So. 2d 979 (Miss. 2008).

¶46.    In *McMillan*, the circuit court "refused [McMillan's] effort to offer into evidence as a part of his case-in-chief a portion of James Ivory's deposition.  McMillan offered the portions of Ivory's deposition without calling Ivory as a witness."  557 So. 2d at 525.  In considering whether the deposition could be entered into evidence, the *McMillan* Court carried out "a combined reading of several portions of the Mississippi Rules of Civil Procedure and the Mississippi Rules of Evidence." *Id.*  While the *McMillan* Court's analysis is lengthy and better summarized in *Hartel*, we note that the *McMillan* Court ultimately found that "McMillan should have been permitted to enter the proffered portions of Ivory's deposition into evidence without calling Ivory as a witness." *Id.* at 526.  And it added that "[t]his is so even though Ivory was available to be called as a witness." *Id.*

¶47.    In *Hartel*,

> Counsel for the Hartels took a videotape deposition of Dr. Pruett on December 10, 2003.  On June 13, 2005, the Hartels notified defendants of their

---

[3] To reiterate, Rule 54(c) became Rule 54(d) effective July 1, 2018.

18

intention to play an edited version of the videotape deposition at trial instead of calling Dr. Pruett as an adverse witness. The circuit court denied the Hartels' motion. The Hartels assert[ed] that this ruling constitut[ed] an abuse of discretion, claiming that Mississippi Rule of Civil Procedure 32(a)(2) permits a party to use the deposition of the opposing party as desired.

998 So. 2d at 988-89.

¶48. In its analysis, the *Hartel* Court first noted the language of Mississippi Rule of Civil Procedure 32(a)(2). *Id.* at 989. The Rule provides:

> **(a) Use of Depositions.** At the trial or upon the hearing of a motion of an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
>
> . . . .
>
> (2) *The deposition of a party* or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a public or private corporation, partnership or association or governmental agency which is a party, *may be used by an adverse party for any purpose*.

M.R.C.P. 32(a)(2) (emphasis added).

¶49. The *Hartel* Court next quoted Mississippi Rule of Evidence 801(d)(2)(A), which "provides, in relevant part, that '(d) [a] statement is not hearsay if: . . . (2) [t]he statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity . . . .'" 998 So. 2d at 989 (alterations in original) (quoting MRE 801(d)(2)(A)). The *Hartel* Court further noted that "[a] party may enter portions of an opposing party's deposition into evidence without calling the opposing party as a witness,

19

provided that portions of the deposition are admissible under Rule 801." *Id.* (citing *McMillan*, 557 So. 2d at 526).

¶50.    After considering the above authority, the *Hartel* Court found that, "[b]ased upon *McMillan*, the circuit court erred in refusing to allow the Hartels to play the edited video deposition of Dr. Pruett." *Id.*  Returning to the present case, the findings in both *McMillan* and *Hartel* directly contradict Thoden's arguments that because (1) Thoden was available to testify at trial and (2) Hallford did not call Thoden to testify, the deposition was somehow inadmissible.  As the two cases make clear, under Mississippi Rule of Civil Procedure 32(a)(2) and Mississippi Rule of Evidence 801(d)(2)(A), the chancellor was justified in admitting the deposition into evidence.  Under Rule 32(a)(2), the deposition was "of a party[,]" Thoden, and could therefore "be used by an adverse party[,] [Hallford,] for any purpose." M.R.C.P. 32(a)(2).  Further, the deposition was not hearsay since it was "offered against" Thoden and was his own statement.  MRE 801(d)(2)(A).

¶51.    Regarding the admissibility of the deposition, we are thus left only with Thoden's final point: that Hallford rested her case before the deposition was entered into evidence. Thoden (1) cites no authority to support his claim that evidence cannot be entered when a hearing is resumed after an off the record discussion in chambers, (2) cites no authority that prevents evidence from being entered when a hearing remains ongoing despite the parties having rested, and (3) offers no credible explanation why counsel for Thoden did not object to the deposition being entered into evidence.  Given this inadequacy, we hold (1) that it is immaterial whether Hallford had rested, (2) that the deposition was admissible and properly

20

entered into evidence by counsel for Hallford, and (3) that none of the facts suggest that the chancellor "applied an erroneous legal standard." *Thoden*, 310 So. 3d at 1159 (internal quotation mark omitted) (quoting *Goode*, 662 So. 2d at 1070-71); *see generally Patton v. State*, 109 So. 3d 66, 75 (Miss. 2012) ("[I]n the absence of meaningful argument and citation of authority, this Court generally will not consider the assignment of error." (internal quotation marks omitted) (quoting *Randolph v. State*, 852 So. 2d 547, 558 (Miss. 2002))).

## CONCLUSION

¶52. The chancellor correctly determined that Thoden was entitled to a refund of his purchase price and interest on that price. We affirm that determination as modified. He also correctly determined (1) that Thoden was not entitled to reimbursement of the cost of repairs, improvements, and maintenance and (2) that Hallford was entitled to a $4,500 set-off. We affirm those determinations as well.

¶53. The chancellor erred, however, by determining that Thoden was not entitled to the taxes he paid on the property for 2015-18. We reverse that determination and award Thoden $2,231.06. Thoden therefore owes Hallford $1,042.68 (the $1,092.50 purchase money refund and interest Hallford owes Thoden, plus the $133.76 she owes him for the cost of the clerk's conveyance, plus the $2,231.06 she owes him in taxes for 2015-18, set-off by the $4,500 Thoden owes Hallford in rent collected).

¶54. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

     **KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR. RANDOLPH, C.J., AND GRIFFIS, J., NOT PARTICIPATING.**